UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID FERN HAWLEY,

        Plaintiff,

Case No. 1:06-cv-209

Hon. Gordon J. Quist

v.

RAYMOND GELABERT, M.D., *et al.*,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The court previously granted a motion to dismiss plaintiff's claims against defendants Correctional Medical Services, Inc. (CMS) and Dr. Gelabert because it made a finding that plaintiff had clearly failed to exhaust his remedies with respect to defendant CMS. The court applied the "total exhaustion rule" announced in *Jones Bey v. Johnson*, 407 F.3d 801(6th Cir. 2005) as the basis for granting defendants' motion to dismiss all defendants. Report and recommendation (Sept. 19, 2006) (docket no. 36) and Order adopting report and recommendation (October 5, 2006) (docket no. 37). Under the "total exhaustion" rule in effect at the time, the suit should have been dismissed in its entirety. However, due to a clerical error in the Clerk's office, only two defendants, the movants CMS and Dr. Gelabert, were dismissed and the suit remained pending. Three months later, the Supreme Court issued its decision in *Jones v. Bock*, -- U.S. --, 127 S. Ct. 910 (2007), which overruled substantial portions of Sixth Circuit's jurisprudence regarding administrative exhaustion of prisoner grievances, including the "total exhaustion" rule expressed in *Jones Bey*. Under these

circumstances, and in light of the *Bock* decision, the court required the remaining three defendants to respond to plaintiff's complaint.

This matter is now before the court on a motion to dismiss filed by defendants Dr. Gelabert, Claire Hammer, Carol Parker and Mary Ann Schorfhaar (docket no. 43).

## II. Dr. Gelabert

Defendant Dr. Gelabert was dismissed pursuant to the now-invalid "total exhaustion" rule. In light of the subsequent decision in *Bock*, the court should vacate its previous order dismissing Dr. Gelabert. By filing the present motion to dismiss, it appears that Dr. Gelabert assumed that he remained a party to this suit. Accordingly, I recommend that the court vacate its October 5, 2006 dismissal of Dr. Gelabert and re-instate him as a defendant in this suit.

## III. Discussion

### A. Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

In the present motion, defendants Gelabert, Hammer, Parker and Schorfhaar have moved to dismiss plaintiff's complaint for failure to exhaust his grievances. Under Fed. Rules Civ. Proc. 12(b)(6), a complaint may be dismissed only if it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). However, the Court need not accept as true legal conclusions or unwarranted factual inferences. *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998).

### B.     Plaintiff's allegations

Plaintiff sets forth the following allegations in his complaint. He was diagnosed with hypoglycemia in 1996 and 2001, and was placed on a dietline with snacks in between meals at the Gus Harrison correctional facility. Compl. at ¶ V. When plaintiff was transferred to the Florence Crane facility, he was placed on the dietline and allowed the snacks, but after 15 days the dietician canceled this "treatment." *Id.* On August 24, 2005 a "fill in" doctor reviewed his file and placed him back on the dietline and snacks. *Id.* Four days later the dietician, defendant Hammer disobeyed the "fill in" doctor's order placing plaintiff on dietline and snacks. *Id.*

Plaintiff seeks relief against defendant Hammer for canceling the "fill in" doctor's order for dietline and snacks. Plaintiff names four additional defendants, alleging as follows: First, defendant Dr. Gelabert "didn[']t do his job or anything to address my medical needs" when defendant Hammer gave him plaintiff's chart. *Id.* Second, defendant "Carol Parker RN Supervisor is involved because she is in charge of all the files and lab works and she didn[']t do anything after talking to her." *Id.* Third, defendant Schorfhaar "is involved because she is in charge of all the medical staff and after [kiting] her kite after kite she didn[']t do anything to help me." *Id.* Fourth, defendant CMS "is involved because [they are] the ones that make the calls to what happens to the Healthcare of the inmates and are in charge of all medical staff" at the facility. *Id.*

Plaintiff seeks a court order directing the MDOC and medical staff to reinstate him on the dietline and snack bags in between meals. *Id.* at ¶ VI. Plaintiff also seeks compensation for every day that he has been without his "medical treatment" since May 17, 2003, and court costs. *Id.*

### C. Exhaustion issue

Plaintiff's complaint is based upon two grievances, ACF-03-07-0514-12H1 and ACF-05-09-1005-12H1, both of which he appealed through Step III of the grievance process. Defendants contend that these grievances were not properly exhausted.

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. Failure to exhaust is an affirmative defense under the PLRA. *Jones*, 127 S. Ct. at 921. In *Woodford v. Ngo*, -- U.S. --, 126 S. Ct. 2378 (2006), the Supreme Court stated that "the PLRA exhaustion requirement requires proper exhaustion." *Woodford*, 126 S. Ct. at 2387 (emphasis added). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 2386. Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a § 1983 action in federal court *Id.* at 2382-93; 42 U.S.C. § 1997e(a).

### 1. Grievance ACF-03-07-0514-12H1

Grievance ACF-03-07-0514-12H1 names defendants Hammer, Dr. Gelebart and non-party Warden Langley. *See* attachment to compl. In this grievance, plaintiff claimed that defendants Dr. Gelabert and Hammer canceled his diabetic snack bags on May 16, 2003. *Id.* Plaintiff lists the incident date of this grievance as May 11, 2003 and May 18, 2003. *Id.* Plaintiff also states that he tried to resolve the grievance on: May 11th, May 17th, May 20th, June 2nd and July 9th. *Id.* Although plaintiff alleged that the incident occurred in May 2003, he did not file the grievance until July 11, 2003. *Id.* Defendants contend that this grievance was untimely and not properly exhausted under *Woodford*.

Michigan Department of Corrections (MDOC), Policy Directive 03.02.130 "Prisoner/Parolee Grievances" provides the time frame for filing grievances. As an initial matter, the defendant incorrectly relies Policy Directive 03.02.130 (effective 12/19/03). Defendants' Brief at 4. Plaintiff filed the grievance on July 11, 2003, prior to the enactment of this version of the policy directive. Under the appropriate directive, Policy Directive 03.02.130 (effective April 28, 2003), plaintiff was required to attempt to resolve the matter with the person with whom he had the grievance "within two business days after becoming aware of a grievable issue." If the matter was not resolved, he was to file a Step I grievance within five business days. Policy Directive 03.02.130 ¶¶ Q and W (effective 4/28/03).

The record reflects that plaintiff did not file his Step I grievance within five business days, but waited nearly two months to act. Despite this delay, however, defendants did not reject the grievance as untimely pursuant to applicable Policy Directive, which provided in pertinent part as follows:

5

>G.   Prisoners and parolees are required to file grievances in a responsible manner. A grievance shall be rejected by the Grievance Coordinator if it contains profanity, threats of physical harm, or language which demeans the character, race, ethnicity, physical appearance, gender, religion or national origin of any person, unless it is part of the description of the grieved behavior and is essential to that description. A grievance also <u>may be rejected</u> for any of the following reasons: . . . .
>
>>4.   The grievance is filed in an untimely manner. The grievance shall not be rejected if there is a valid reason for the delay, e.g., transfer.

Policy Directive 03.02.130 ¶ G.4. (effective April 28, 2003) (emphasis added).

Here, the record reflects that this grievance was neither rejected outright nor considered untimely at any step of the grievance appeal process. *See* attachment to compl. Defendants contend that the grievance was not rejected as untimely, because under the controlling Sixth Circuit law of the time, *Thomas v. Woolum*, 337 F.3d 720, 733 (6th 2003), the court allowed prisoners to exhaust grievances "regardless of whether the prisoner complied with the grievance system's procedural requirements." Defendants state that "the *Thomas* decision was a disincentive for prisons to reject grievances that failed to comply with procedural requirements such as time limitations, instead those grievances were addressed on the merits." Defendants' Brief at 7. Now that the Sixth Circuit's approach in *Thomas* has been rejected by the Supreme Court in *Woodford*, defendants assert that plaintiff's claims based upon this untimely grievance should be dismissed due to improper exhaustion. The court disagrees.

While the *Thomas* opinion may have given the MDOC a disincentive to reject grievances, the MDOC retained the option to review an untimely grievance on the merits prior to that decision. *See* Policy Directive 03.02.130 ¶ G.4. Although defendants now argue that the grievance was untimely, the MDOC neither rejected nor denied the grievance as untimely at any level of the grievance process, but addressed and denied the grievance solely on the merits.

6

Defendants having not relied upon a defense of lack of exhaustion when it addressed plaintiff's grievance in 2003, no notions of comity are violated if this court does the same. Accordingly, defendants' motion to dismiss for lack of exhaustion is denied with respect to the claims arising in May 2003 against Dr. Gelabert and dietician Hammer.

### 2. Grievance ACF-05-09-1005-12H1

Grievance ACF-05-09-1005-12H1 names defendants Hammer, Dr. Gelabert, Parker and Schorfhaar. *See* attachment to compl. In his grievance, plaintiff claims that that on August 24, 2005, he saw a "fill in doctor" at the facility, who reviewed his charts and wrote an "order for diet line and snack bags in between meals [and] high protein for hypoglycemia." *Id.* Then, on August 29, 2005, defendant Hammer sent plaintiff a kite stating that he will not be getting the detail until Dr. Gelabert reviewed his chart. *Id.* Plaintiff alleged that dietician Hammer was refusing to follow the other doctor's order because of the grievance he filed against her in 2003 (i.e., grievance ACF 03-07-514-12H1). *Id.*

In the Step I response, the MDOC stated that

> [Plaintiff's] chart was reviewed by the doctor on 9/7/05 and it was decided that there was no evidence of reactive hypoglycemia. The doctor ordered further tests (total serum insulin and insulin absorption) "in order to look for autoimmune insulin syndrome." [Plaintiff] refused to have blood drawn for the tests and was told to kite if he changed his mind. Health Care has been provided consistent with the direction of PD 04.07.101 Therapeutic Diet Services. There is no evidence to support the grievant's allegation.

*Id.*

Defendants Dr. Gelabert, Parker and Schorfaar contend that the grievance fails to properly identify them, relying on Policy Directive 03.02.130 (effective 12/19/03), which provides the following requirements for submission of grievance forms:

> The forms may be completed by hand or by typewriter [sic] however, handwriting must be legible. The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Date, times, places and names of all those involved in the issue being grieved are to be included.

Policy Directive 03.02.130 ¶ T (emphasis in original).

The court agrees with defendants that plaintiff did not properly exhaust his claims with respect to defendants Parker and Schorfhaar, because he failed to identify any wrongdoing by these defendants or discuss their involvement in the dispute regarding the cancellation of his diabetic diet. Clearly, the requirement of fair notice contemplated by the Policy Directive has not been satisfied. However, it does appear that plaintiff properly exhausted his claim against defendants Dr. Gelabert and dietician Hammer. He identified both Dr. Gelabert and dietician Hammer in the grievance, which led to an MDOC investigation of the matter and the doctor's subsequent review of plaintiff's chart.[1] Accordingly, the motion to dismiss the August 2005 claims should be granted with respect defendants Parker and Schorfhaar, but denied with respect to defendants Dr. Gelabert and Hammer.

**IV.   Recommendation**

For the reasons set forth above, I respectfully recommend that the court's October 5, 2006 order (docket no. 37) be **VACATED** to the extent that it dismissed Dr. Gelabert from this suit, and that he be re-instated as a defendant.

---

[1] Based on the Step I response, defendants may assert that plaintiff refused to comply with the doctor's recommended treatment. If this is true, then plaintiff may be unable to prove a constitutional violation related to his health care. *See, e.g., Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990) (a prisoner's disagreement with a course of medical treatment does not state a federal constitutional claim). However, this is an issue to be determined at a later date.

I further recommend that defendants' motion to dismiss (docket no. 43) be **GRANTED** with respect to defendants Parker and Schorfaar and that they be dismissed from this suit, and, that defendants' motion be **DENIED** with respect to defendants Hammer and Dr. Gelabert.


Dated:  January 4, 2008                    /s/ Hugh W. Brenneman, Jr.
                                           HUGH W. BRENNEMAN, JR.
                                           United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).