UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID FERN HAWLEY,

        Plaintiff,

Case No. 1:06-cv-209

Hon. Gordon J. Quist

v.

RAYMOND GELABERT, M.D., *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on motions for summary judgment filed by the two remaining defendants, Claire Hammer, a registered dietician (docket no. 67), and Dr. Raymond Gelabert (docket no. 77). The motions are unopposed.

        **I.**        **Background**

        Plaintiff sets forth the following allegations in his complaint. He was diagnosed with hypoglycemia in 1996 and 2001, and was placed on a dietline with snacks in between meals at the Gus Harrison correctional facility. Compl. at ¶ V. When plaintiff was transferred to the Florence Crane facility (ACF), he was placed on the dietline and allowed the snacks, but after 15 days the dietician canceled this "treatment." *Id.* On August 24, 2005 a "fill in" doctor reviewed his file and placed him back on the dietline and snacks. *Id.* Four days later the dietician, defendant Hammer disobeyed the "fill in" doctor's order placing plaintiff on dietline and snacks. *Id.*

        Plaintiff seeks relief against defendant Hammer for canceling the "fill in" doctor's order for dietline and snacks. Plaintiff names four additional defendants, alleging as follows: First,

defendant Dr. Gelabert "didn[']t do his job or anything to address my medical needs" when defendant Hammer gave him plaintiff's chart. *Id.* Second, defendant "Carol Parker RN Supervisor is involved because she is in charge of all the files and lab works and she didn[']t do anything after talking to her." *Id.* Third, defendant Schorfhaar "is involved because she is in charge of all the medical staff and after [kiting] her kite after kite she didn[']t do anything to help me." *Id.* Fourth, defendant CMS "is involved because [they are] the ones that make the calls to what happens to the Healthcare of the inmates and are in charge of all medical staff" at the facility. *Id.*

Plaintiff seeks a court order directing the MDOC and medical staff to reinstate him on the dietline and snack bags in between meals. *Id.* at ¶ VI. Plaintiff also seeks compensation for every day that he has been without his "medical treatment" since May 17, 2003 [sic], and court costs. *Id.* Ms. Hammer and Dr. Gelabert, the only remaining defendants in this action, now seek summary judgment on plaintiff's claims.

### II. Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).

"In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The motion is unopposed. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2nd Cir. 1996). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).

**III.     Discussion**

**A.     Eighth Amendment violation**

Plaintiff claims that defendants did not address his medical needs. It is well established that an inmate has a cause of action under 42 U.S.C. § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires the infliction of serious pain. *See Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9. The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, deliberate indifference, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

### B. Claire Hammer

Plaintiff has sued Ms. Hammer in her official capacity as a registered dietician at the Michigan Department of Corrections ("MDOC"). Compl. at p. 4. As such, plaintiff's claim for monetary damages is barred by Eleventh Amendment immunity. *See Will v. Department of State Police*, 491 U.S. 58, 64-71 (1989); *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) ("the Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities").

The Eleventh Amendment, however, does not bar plaintiff's claim for injunctive relief brought against Ms. Hammer in her official capacity. *See Will*, 491 U.S. at 71, n. 10 ("a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State") (internal quotation marks omitted). Nevertheless, plaintiff is not entitled to injunctive relief against this decision. The record reflects that plaintiff was transferred to a different correctional facility on or about January 17, 2008. *See* docket no. 53. Plaintiff's transfer from ACF renders his claims for injunctive relief against members of that facility's staff, in this case Ms. Hammer, moot. *See Henderson v.* Martin, 73 Fed. Appx. 115, 117 (6th Cir. 2003) (prisoner's claim for injunctive relief against prison officials became moot when prisoner was transferred from the prison of which he complained to a different facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (prisoner's claims for declaratory and injunctive relief for prison staff's improper examination of his legal mail found moot because he was no longer confined at the facility that searched his mail). Furthermore, for the reasons discussed below, there was no violation of plaintiff's Eighth Amendment rights in any event. Accordingly, Ms. Hammer's motion for summary judgment should be granted.

### B.     Dr. Raymond Gelabert

Dr. Gelabert contends that plaintiff has failed to demonstrate both the objective and subjective components of an Eighth Amendment claim. Dr. Gelabert recounted his involvement with plaintiff in an affidavit. *See* Dr. Gelabert Aff, docket no. 77-4. The doctor noted that plaintiff had the following history of hypoglycemia: a possible diagnosis in 1996; plaintiff's claim that he had a history of hypoglycemia prior to October 5, 2001; plaintiff's claim that his sugar level dropped to 53 on one occasion while incarcerated; and plaintiff's claim that he had an acute episode in February 2001. *Id.* at ¶¶ 5-6.

Registered Dietician Hammer noted in May 2003 that plaintiff had a "snack detail" for hypoglycemia. *Id.* at ¶ 7. Ms. Hammer further noted that plaintiff had a glucose tolerance test (GTT) in 1996 which indicated hypoglycemia, but that the GTT was no longer considered a reliable indicator of hypoglycemia. *Id.* Hammer recommended cancelling the snacks. *Id.* Plaintiff kited the issue on May 19, 2003. *Id.* at ¶ 8. Hammer informed plaintiff in writing that the GTT was not reliable and that there was no documentation in his medical chart that would indicate hypoglycemia. *Id.* On July 31, 2003, plaintiff had a blood sugar level of 78, which fell within the normal range of 70 to 110. *Id.* at ¶ 9. Plaintiff was advised of the results. *Id.* On August 5, 2003, plaintiff complained that his sugar was dropping, his mouth was dry and he was sweating. *Id.* at ¶ 10. The records indicate that Nurse Griffin noted a random blood sugar level of 92, with no diaphoresis or tremors, that she assessed plaintiff as having normal blood sugar, and that plaintiff left the clinic angrily after being advised of the results. *Id.* A lab report dated August 8, 2003, showed that plaintiff had a fasting blood sugar level of 89, with the normal range being 70 to 105 mg/dl. *Id.* at ¶ 11.

Plaintiff's blood sugar was tested three times on July 16, 2004, with readings of 117, 84 and 87. *Id.* at ¶ 16. A fasting blood sugar lab report on that day showed a reading of 84, which fell within the 70 to 105 normal range. *Id.*

Approximately one year later, on July 15, 2005, a lab report for fasting blood sugar showed a reading of 67, with a normal range of 70 to 105 mg/dl. *Id.* at ¶ 18. Despite this finding, plaintiff *refused* a blood draw the next day. *Id.* On August 14, 2005, a nurse noted plaintiff's alleged history of hypoglycemia and claims that he got shaky and diaphoretic when his blood sugar fell below 70. *Id.* at ¶ 20. The nurse made plaintiff an appointment to discuss a hypoglycemic diet and protein snacks because plaintiff claimed he could not afford snacks. *Id.* On August 30, 2005, Ms. Hammer noted that plaintiff displayed no symptoms and his lab test did not indicate reactive hypoglycemia. *Id.* at ¶ 21.

Dr. Gelabert was referred to plaintiff's case on September 25, 2005 and performed a chart review regarding his history of hypoglycemia. *Id.* at ¶ 22. The doctor noted that there was no blood sugar under 50 reported, that his last blood sugar noted was 67 in July 2005, and that his C-peptides were normal as of July 16, 2004. *Id.* The doctor noted the results of the 1996 GTT, and concluded to order "a total serum insulin and insulin Abs, in order to look for autoimmune insulin syndrome." *Id.* at 22. The doctor agreed with Ms. Hammer's conclusion of "no reactive hypoglycemia," and recorded physician orders to discontinue hypoglycemic diet and three protein snacks, because there was no medical indication for these. *Id.* at ¶¶ 22-23. A November 10, 2005 lab report showed plaintiff's free insulin level within the normal range. *Id.* at ¶ 24. Dr. Gelabert had no involvement with plaintiff after the Fall of 2005, the doctor's activity having been limited "to review [plaintiff's] chart and order lab work and confirm the dietician's orders." *Id.* at ¶ 25.

Viewing the facts in the light most favorable to plaintiff, the court concludes that there is no evidence that he suffered from a serious medical condition requiring a special diet. Blood tests performed after the 1996 GTT repeatedly established that plaintiff had blood sugar levels within the normal range. Plaintiff had only one test that fell below the normal range. However, he refused a followup blood test the next day. The inference to be drawn from plaintiff's refusal for additional medical testing is that he did not suffer from a serious medical condition. Sick people want to provide their medical providers with as much data as necessary to diagnose and treat their condition. In Dr. Gelabert's opinion, the medical tests confirmed the dietician's orders to discontinue a hypoglycemic diet and protein snacks. While plaintiff did not agree with these orders, his disagreement with this course of medical treatment did not state a federal constitutional claim. *See Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990). *See also*, *Woodberry v. Simmons*, 146 Fed.Appx. 976, 977 (10th Cir. 2005) ("a difference of opinion between a prisoner and the prison medical staff about medical treatment does not constitute deliberate indifference"). Accordingly, Dr. Gelabert is entitled to summary judgment.

### IV.    Recommendation

For the reasons set forth above, I respectfully recommend that the motions for summary judgment filed by Ms. Hammer (docket no. 67) and Dr. Raymond Gelabert (docket no. 77) be **GRANTED** and that this case be dismissed.


Dated:  June 29, 2009                               /s/ Hugh W. Brenneman, Jr.
                                                    HUGH W. BRENNEMAN, JR.
                                                    United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).